IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | CAUSE NO. 6:13-CV-256 |
| | § | |
| v. | § | CONSOLIDATED LEAD CASE |
| | § | |
| ACTIVISION BLIZZARD, INC., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the disputed claim terms in U.S. Patent No. 5,490,216 ("the '216 Patent"). In lieu of holding a *Markman* hearing on claim construction issues in this case, the parties stipulated to rely on claim construction briefing and proceedings in an earlier case, styled *Uniloc USA, Inc. v. Sony Corp. of Am. et al.*, No. 6:10-cv-373 ("*Uniloc I*"). Docket No. 72. The Court granted the parties' stipulation on July 17, 2014 and incorporated the *Uniloc I* claim construction filings into the record. Docket No. 73. This Memorandum Opinion and Order memorializes the constructions in *Uniloc I* and incorporates the agreed constructions in the parties' stipulation.[1]

## BACKGROUND

Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively, "Uniloc") assert the '216 Patent against Defendants Activision Blizzard Inc. and Electronic Arts, Inc. The '216 Patent discloses a software registration system that permits a user to activate software in a use mode if and only if a license verification procedure has been successfully executed.

---

[1] The claim constructions in this Order are based on Docket Nos. 192, 202, 204, 205, 207, 208, 209, 211, 213, 214, 215, and 221 in *Uniloc I* and the parties' joint stipulation in the instant case. *See* Docket No. 73 at 1–2.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The doctrine of prosecution history disclaimer "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Omeg Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). For the doctrine to apply, the disclaimer of claim scope must be clear and unmistakable. *Computer*

*Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). Prosecution disclaimer does not apply where the prosecution history is ambiguous. *See id.* at 1375.

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## AGREED CLAIM TERMS

In their Joint Claim Construction and Prehearing Statement (*Uniloc I*, Docket No. 192 at 7–9), the *Uniloc I* parties agreed to the construction of the following terms:

| Claim Term | Agreed Construction |
|---|---|
| licensee unique ID | a unique identifier associated with a licensee |
| local licensee unique ID generating means<br><br>remote licensee unique ID generating means | <u>Function</u>: to generate a local or remote licensee unique ID<br><br><u>Structure</u>: a summation algorithm or a summer and equivalents thereof |
| algorithm | any set of instruction that can be followed to carry out a particular task |

| | |
|---|---|
| includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID | includes the identical algorithm used by the local licensee unique ID generating means to produce the licensee unique ID[2] |
| use mode | a mode that allows full use of the digital data or software in accordance with the license |
| mode switching means | Function: to permit the digital data or software to run in a use mode if the locally generated licensee unique ID matches with the remotely generated licensee unique ID[3]<br><br>Structure: program code which performs a comparison of two numbers or a comparator and equivalents thereof |
| has matched | a comparison between the locally generated licensee unique ID and the remotely generated licensee unique ID shows that the two are the same[4] |
| registration system | a system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed |
| local (in the phrase "local licensee unique ID generating means")[5] | on the computer on which the digital data is executing or is to be executed |

---

[2] The *Uniloc I* parties agreed that the construction of this term is "includes the identical algorithm used by the local licensee unique ID generating means to produce the licensee." *Uniloc I*, Docket No. 192 at 7. Because it appears that the omission of "unique ID" from the end of the construction was a typographical error, the Court construes this term as set forth above.

[3] The *Uniloc I* parties submitted this agreed construction to the Court, except that their construction read ". . . to run in a use mode *of* the locally generated licensee unique ID matches . . . ." *Uniloc I*, Docket No. 192 at 8 (emphasis added). The Court construes the term as set forth above to correct for an apparent typographical error.

[4] The *Uniloc I* parties submitted this agreed construction to the Court as "a comparison between locally generated licensee unique ID . . ." *Uniloc I*, Docket No. 192 at 8. The Court construes this term as set forth above.

[5] In *Uniloc I*, the parties agreed to the construction of this term after submitting their Joint Claim Construction and Prehearing Statement. *Uniloc I*, Docket No. 202 at 2. The parties in the instant case also agree on this construction. Docket No. 73 at 2.

# DISPUTED CLAIM TERMS

**permits use of said digital data . . . only if [the local licensee unique ID] has matched [the remote licensee unique ID]**

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The ordinary meaning of the phrase is clear and unambiguous. Thus, the phrase does not require construction. | when [the local and remote licensee unique IDs] have matched then the use of said digital data is permitted |

Claim 19 of the '216 Patent contains the term "permits use of said digital data . . . only if [the local licensee unique ID] has matched [the remote licensee unique ID]."

The *Uniloc I* plaintiffs argued that no construction is necessary because the phrase would be easily understood and applied by a jury. *Uniloc I*, Docket No. 202 at 13. The plaintiffs criticized the defendants' proposed construction for merely "rearrang[ing] the words of the disputed phrase." *Id.* at 13–14. According to the plaintiffs, it would be improper to include the defendants' "causal limitation" in the construction because the plain claim language does not require it. *Uniloc I*, Docket No. 208 at 7–8. In response, the defendants argued that the construction must require "a causal relationship between the matching and permitting of use" of digital data. *Uniloc I*, Docket No. 205 at 4, 8–9. The defendants pointed to the First and Seventh Embodiments in the specification to support their argument. *Id.* at 6–7.

The plaintiffs are correct. The claim language, particularly when read in view of the specification and dependent claims, does not impose either a temporal or a direct and immediate causation requirement. The defendants' construction improperly imports a limitation from two embodiments by requiring access to the digital data "when" the licensee unique IDs match. *See Comark Commc'ns, Inc.*, 156 F.3d at 1187 (holding that particular embodiments in the specification are generally not read into the claims). The Court finds that "permits use of said

digital data . . . only if [the local licensee unique ID] has matched [the remote licensee unique ID]" does not require construction.

**Reexamination Disclaimer 1: Licensee Unique ID**

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| There is no disclaimer in the reexamination file history. | The licensee unique ID cannot be generated by a checksum, summation algorithm, summer, or equivalents thereof, used to test data integrity. |

In *Uniloc I*, the defendants argued that the patentee had disclaimed the scope of "licensee unique ID." *Uniloc I*, Docket No. 205 at 10. The defendants argued that in order to overcome prior art, the patentee had repeatedly stated "what its claims did and did not cover." *Id.* (emphasis omitted). The plaintiffs argued that the statements during reexamination were explanations necessary to correct a misunderstanding by the examiner, rather than disclaimers. *Uniloc I*, Docket No. 202 at 15.

The patentee did not disclaim the scope of "licensee unique ID" as the defendants argued. In response to the examiner's non-final obviousness rejections, the patentee took issue with the prior art's use of a checksum. *Id.* at 16 ("But Grundy's checksum is solely used to verify the accuracy of user-entered information – it is not a unique identifier associated with a licensee."). The plaintiffs argued that the substitution of Grundy's checksum function in the second prior art reference ("Hellman"), as advanced by the examiner, would not result in the claimed invention. *Id.* at 16–17. This is because Grundy's checksum function would only provide Hellman with data *verification* and not a licensee unique ID. *See id.* Therefore, the Court finds that there was no disclaimer in the reexamination file history cited by the defendants in *Uniloc I*. *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 493 F.3d 1358, 1365 (Fed. Cir. 2007)

(declining to find disclaimer where a statement was not "sufficiently clear and deliberate to meet the high standard for finding a disclaimer of claim scope").

**Reexamination Disclaimer 2: Licensee Unique ID**

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| There is no disclaimer in the reexamination file history. | The licensee unique ID generated by the means recited in each of the claims must be derived from at least one piece of information that is specific to the user, such as name, billing information, or product information unique to the installation entered by the user. The information cannot be specific to the computer or independently generated by the computer. |

The *Uniloc I* defendants also argued that the patentee had further disclaimed the scope of "licensee unique ID" by limiting the types of information used to generate a licensee unique ID. *Uniloc I*, Docket No. 205 at 16. According to the defendants, the patentee stated during reexamination that the invention requires "a unique identifier associated with a licensee." *Id.* at 16–17. The examiner then issued a Notice of Intent to Issue Ex Parte Reexamination Certificate in which he stated that "[t]he licensee unique ID . . . must be derived from at least [one] piece of information that is specific to the user. . . . The information cannot be specific to the computer or independently generated by the computer." *Uniloc I*, Docket No. 205-5, Ex. 5. Therefore, the defendants argued, the licensee unique ID must be unique to a licensee. *Id.* at 19–26. The plaintiffs argued that there was no disclaimer and that the Federal Circuit acknowledged as much when it construed "licensee unique ID" as merely "a unique identifier associated with a licensee." *Uniloc I*, Docket No. 202 at 23–25.

As the *Uniloc I* plaintiffs argued, there was no disclaimer. In separate litigation involving the same patent, the Federal Circuit rejected an argument that the "licensee unique ID" must be based on personal information about the user. *Uniloc USA, Inc. v. Microsoft Corp.*, 290 F.

App'x 337, 342 (Fed. Cir. 2008). The Federal Circuit recognized that although the specification makes "ample reference to the licensee unique ID being generated from information unique to the user," it would be improper to import limitations from the preferred embodiments into the claims. *Id.* at 342–43.

Here, the *Uniloc I* defendants have failed to show that the examiner's comments are inconsistent with the construction of "licensee unique ID" as confirmed by the Federal Circuit. Rather than require the patentee to amend the claim, the examiner allowed the claim as it was previously construed. *See Ancora Technologies, Inc. v. Apple, Inc.*, 744 F.3d 732, 736 (Fed. Cir. 2014) (explaining that an examiner's remarks in a notice of allowance may be insufficient to limit claim scope). Accordingly, the Court finds that there was no disclaimer in the reexamination file history cited by the defendants.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table in Appendix A and the parties' agreed constructions are set forth in a table in Appendix B.

**So ORDERED and SIGNED this 17th day of November, 2014.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# APPENDIX A

| Claim Term | Court's Construction |
|---|---|
| permits use of said digital data . . . only if [the local licensee unique ID] has matched [the remote licensee unique ID] | The Court finds that this term does not require construction. |
| Reexamination Disclaimer 1: Licensee Unique ID | The Court finds that there was no disclaimer regarding the licensee unique ID. |
| Reexamination Disclaimer 2: Licensee Unique ID | The Court finds that there was no disclaimer regarding the licensee unique ID. |

# APPENDIX B

| Claim Term | Agreed Construction |
|---|---|
| licensee unique ID | a unique identifier associated with a licensee |
| local licensee unique ID generating means<br><br>remote licensee unique ID generating means | <u>Function</u>: to generate a local or remote licensee unique ID<br><br><u>Structure</u>: a summation algorithm or a summer and equivalents thereof |
| algorithm | any set of instruction that can be followed to carry out a particular task |
| includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID | includes the identical algorithm used by the local licensee unique ID generating means to produce the licensee unique ID |
| use mode | a mode that allows full use of the digital data or software in accordance with the license |
| mode switching means | <u>Function</u>: to permit the digital data or software to run in a use mode if the locally generated licensee unique ID matches with the remotely generated licensee unique ID<br><br><u>Structure</u>: program code which performs a comparison of two numbers or a comparator and equivalents thereof |
| has matched | a comparison between the locally generated licensee unique ID and the remotely generated licensee unique ID shows that the two are the same |
| registration system | a system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed |
| local (in the phrase "local licensee unique ID generating means") | on the computer on which the digital data is executing or is to be executed |